AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Red Apple iPhone
Model: Unknown
With no identifying numbers or features

Case No. 2:23-mj-8615-LR

FILED
Aug 11 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ ClaudiaCarranza  DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent-Intelligence Miguel Flores incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent-Intelligence Miguel Flores
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 08/11/2023

*Judge's signature*

City and state: El Centro, California       HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**    Red Apple iPhone
Model: Unknown
IMEI: With no identifying numbers or features
Seized from Pablo Jaime CUEVAS-Garcia
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 6, 2023, up to and including July 6, 2023, and is limited to the following:

   a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the Target Device;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Miguel Flores, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Gold Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Antonio Ramon CHAVOYA
**(Target Device #1)**

**A-2:** Black Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Jesus Oscar CHAIDEZ-Rodriguez
**(Target Device #2)**

**A-3:** Red Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Pablo Jaime CUEVAS-Garcia
**(Target Device #3)**

**A-4:** BLU Cellphone
Model: Unknown
With no identifying numbers or features
Seized from Jose Antonio CARRILLO-De La Mora
**(Target Device #4) (collectively "the Target Devices")**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Antonio Ramon CHAVOYA (CHAVOYA) for transportation of illegal aliens Jose Antonio CARRILLO-De La Mora (CARRILLO), Jesus Oscar CHAIDEZ-Rodriguez (CHAIDEZ),

1

and Pablo Jaime CUEVAS-Garcia (CUEVAS) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from CHAVOYA and the Material Witnesses on or about July 5, 2023, incident to the arrest of CHAVOYA and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since December 4, 2006, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

3

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On July 5, 2023, operators in the Remote Video Surveillance System (RVSS) room were conducting surveillance of the border area approximately 18 miles east of the Calexico Port of Entry. This area of the border region consists mainly of spotted brush and open desert. In this area, there is a fence on the International Boundary that is approximately 20 feet tall and the All-American Canal (AAC) runs parallel to the International Boundary.

11. At approximately 11:59 a.m., Border Patrol Agent (BPA) M. Celaya responded to a ground sensor activation in the area relayed to him via Service radio from the RVSS room. BPA M. Celaya observed foot prints walking north from the border towards the AAC. BPA M. Celaya observed that the foot prints were approximately three and a half miles east of the Imperial Irrigation District's (IID) Drop 4, which sits on the AAC.

12. At approximately 12:10 pm, BPA A. Alcala observed, through RVSS, three suspected illegal aliens swimming north across the AAC. RVSS operators observed that the suspected illegal aliens were approximately three and a half miles east of Drop 4. BPA A. Alcala observed the suspected illegal aliens exit the AAC and make their way northbound towards Highway 98. BPA A. Alcala observed the suspected illegal aliens stop a few yards south of Highway 98 and hide in some brush. BPA A. Alcala relayed all this information to his fellow Agents in the field.

13. BPA J. Bourque, who was parked near the area in an unmarked Service vehicle, observed the suspected illegal aliens standing near the shoulder of Highway 98. BPA J. Bourque observed a silver Honda Civic, later identified as a 2002 Honda Civic bearing California license plates, driving eastbound on Highway 98 towards the area where the suspected illegal aliens were hiding. BPA J. Bourque and BPA A. Alcala both observed

the Honda slow down and stop next to the suspected illegal aliens, the passenger door of the Honda opened and the suspected illegal aliens entered the Honda before the Honda continued eastbound on Highway 98. The information was relayed to other HIT members in the field via Service radio. BPA Bourque drove his unmarked Service vehicle behind the Honda and began to follow the Honda eastbound on Highway 98. BPA J. Bourque was soon joined by BPA J. Quintero, who was driving an unmarked Service vehicle, and BPA A. Pena, who was driving a fully marked Service vehicle. BPA D. Davalos relayed to the Agents that he would be set up west of the Highway 98/Interstate 8 overpass (East Y) at the Caltrans facility with a Vehicle Immobilization Device (VID) if the Honda failed to yield.

14. BPAs Pena and Bourque activated the emergency lights and sirens of their respective Service vehicles to signal for the Honda to stop. BPA A. Pena drove his marked Service vehicle directly behind the Honda, but the Honda failed to yield. The Honda continued to flee eastbound on Highway 98 for approximately one mile before approaching the Caltrans facility. As the Honda approached BPA Davalos' position, BPA Davalos deployed his VID into the roadway. The Honda swerved aggressively to the left, entering the oncoming lanes, and avoided contact with the VID. The Honda continued eastbound towards the East Y overpass. At that time, a semi-tractor trailer was traveling eastbound directly in front of the Honda stopped in the eastbound lanes of Highway 98 and the Honda came to a stop behind the semi-tractor trailer. BPAs Pena, Bourque and Quintero then surrounded the Honda with their Service vehicles and conducted the vehicle stop.

15. BPAs Pena and Quintero approached the Honda and identified themselves as United States Border Patrol Agents to the occupants of the vehicle. BPA Pena ordered the driver of the Honda, later identified as CHAVOYA, to exit the Honda. CHAVOYA exited the Honda and was detained in handcuffs. BPA Pena was able to determine that CHAVOYA is a United States Citizen. BPA Quintero ordered the front seat passenger of the Honda, later identified as J.J.E. (a juvenile), to exit the vehicle. J.J.E. exited the Honda

and was detained in handcuffs. BPA J. Quintero was able to determine J.J.E. is a United States Citizen.

16. BPA Bourque approached the Honda and identified himself as a United States Border Patrol Agent to the remaining rear seat occupants of the Honda. BPA Bourque questioned the passengers of the Honda and was able to determine that all three passengers, later identified as Jose Antonio CARRILLO-De La Mora (CARRILLO), Jesus Oscar CHAIDEZ-Rodriguez (CHAIDEZ) and Pablo Jaime CUEVAS-Garcia (CUEVAS), were citizens of Mexico illegally present in the United States. CHAVOYA, J.J.E. and the three passengers were placed under arrest and were transported to the Calexico Border Patrol Station for further processing and interviews.

17. At the Border Patrol Station, CHAVOYA was advised of his Miranda rights in the English language by BPA Mills and this was witnessed by BPA Davalos. CHAVOYA stated he understood his rights and was willing to answer questions without the presence of an attorney. CHAVOYA stated he is a United States Citizen. CHAVOYA stated that he received a phone call from J.J.E. and J.J.E. asked him if he had a car and if he wanted to pick up "pollos." CHAVOYA stated that J.J.E. told him he would be paid $1,000.00 for each person he picked up. CHAVOYA stated that J.J.E. was on the phone talking to people and when he saw the people on the side of the road, J.J.E. told him to stop. CHAVOYA stated he drove around the spikes into the opposite lane of travel because he thought the spikes were going to send him off the roadway. CHAVOYA was provided with six pack photographic lineup "B" and positively identified Photo #4 as the passenger of the Honda. Photo #4 is a photograph of J.J.E.

18. Material Witness CARRILLO stated he is a citizen of Mexico, and he does not possess any immigration documents that would allow him to work or reside in the United States legally. CARRILLO stated he made arrangements to be smuggled into the United States for approximately $10,000.00. CARRILLO stated he boarded the backseat of the vehicle. CARRILLO was presented with six-pack photo line-up "A" and was able to positively identify Photo #1 as the driver. Photo #1 is a photograph of CHAVOYA.

19. Material Witness CHAIDEZ stated he is a citizen of Mexico that he does not possess any immigration documents that would allow him to work or reside in the United States legally. CHAIDEZ stated that he made arrangements to be smuggled into the United States for approximately $9,500.00. CHAIDEZ stated he boarded the backseat of the vehicle. CHAIDEZ was presented with six-pack photo line-up "A" and was able to positively identify Photo #1 as the driver. Photo #1 is a photograph of CHAVOYA. CHAIDEZ was presented with six-pack photo line-up "B" and was able to positively identify Photo #4 as the passenger of the vehicle. Photo #4 is a photograph of J.J.E.

20. Material Witness CUEVAS stated he is a citizen of Mexico and does not possess any immigration documents that would allow him to work or reside in the United States legally. CUEVAS stated that his family made arrangements to be smuggled into the United States for approximately $10,000.00. CUEVAS stated he boarded the backseat of the vehicle. CUEVAS was presented with six-pack photo line-up "A" and was able to positively identify Photo #1 as the driver. Photo #1 is a photograph of CHAVOYA. CUEVAS was presented with six-pack photo line-up "B" and was able to positively identify Photo #4 as the passenger of the vehicle. Photo #4 is a photograph of J.J.E.

21. During an inventory search of the Honda, BPA Borque located a gold iPhone (Target Device #1) between the driver's seat and the front passenger's seat. CHAVOYA claimed ownership of this phone. During a search incident to arrest of the three Material Witnesses, BPA Mills located a black Apple iPhone (Target Device #2) in the front pants pocket of Jesus Oscar CHAIDEZ-Rodriguez; a red Apple iPhone (Target Device #3) in the front pants pocket of Pablo Jaime CUEVAS-Garcia; and a BLU Cellphone (Target Device #4) in the front pants pocket of Jose Antonio CARRILLO-De La Mora. Each Material Witness claimed ownership of their respective cellphone and they were seized as evidence.

22. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally,

co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on June 6, 2023, up to and including July 6, 2023, the day after the arrest of CHAVOYA and the Material Witnesses.

## METHODOLOGY

23. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic

analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

26. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CHAVOYA and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by CHAVOYA, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Miguel Flores
Border Patrol Agent-Intelligence
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of August, 2023.

_____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     Gold Apple iPhone
Model: Unknown
IMEI: With no identifying numbers or features
Seized from Antonio Ramon CHAVOYA
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**   Black Apple iPhone
Model: Unknown
IMEI: With no identifying numbers or features
Seized from Jesus Oscar CHAIDEZ-Rodriguez
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**  Red Apple iPhone
Model: Unknown
IMEI: With no identifying numbers or features
Seized from Pablo Jaime CUEVAS-Garcia
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**   BLU Cellphone
Model: Unknown
IMEI: With no identifying numbers or features
Seized from Jose Antonio CARRILLO-De La Mora
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 6, 2023, up to and including July 6, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.